I assume that in this time of presidential primaries that this Eugene McCarthy is not one of the former candidates for president. Is that right? That is correct, Your Honor. He chose a more lucrative route. He's running, but in a different industry. He's running, but he's in Reeboks or Nikes. He chose a more lucrative one, but unfortunately can't perform it at this moment. May it please the Court and Counsel, I am Stephen Manchell, and along with Christopher Carson, I represent Defendant Appellant Eugene McCarthy. This appeal presents three fundamental legal issues. One, whether under the Oregon statute governing the enforcement of employee non-compete agreements, an agreement signed after what the statute calls a bona fide advancement is nevertheless valid. The second issue is whether under Oregon common law, an agreement that is not otherwise void may be enforced if its sole purpose and intent is to stem free and fair competition. The third issue is whether under federal law governing injunctions, an injunction may issue if the moving party fails to demonstrate irreparable harm. The answer to all of those questions is no. ORS 653.295 is the Oregon statute governing the enforceability of employee non-competes. Under that statute, all employee non-competes are void and shall not be enforced unless they are executed in accordance with two stated exceptions. One, upon an employee's initial employment, and two, upon the employee's bona fide advancement. Okay, and upon, where's the language in the statute or in any construction that says upon has to be coincident with the, or what is it coincident with? Because then, let me, so I'm not asking you to shoot sort of fish in a barrel here. The trouble I'm having construing the statute is that to the extent one is talking about upon employment, because when somebody comes in new to a business, upon employment is pretty clear. And, indeed, the original statute said it had to be upon employment, and they amended it in 83 to say, look, if we want to promote people from within, we have to be able to exact non-compete agreements if, in fact, that is an incident and important to the new level of responsibility and whatever. So, the statute says upon a bona fide advancement, meaning, as I understand it, that it's a real promotion. It's a real deal. It isn't just some title change. When, in the course of these events, in the course of one's employment, does the upon come? Is it upon when they tell him? Is it upon when he takes a few steps, as the district court here found in this transition period? When is the timing element? How do we read the timing element in here? Two responses to that, Your Honor. Number one, the timing element is somewhat difficult and purposefully so. The court just used the word promotion. It is not used in the statute. The term is advancement. And, in fact, when you review the legislative history, you'll see that initially the term promotion was the term used. The act was described as an act dealing with employee non-competes upon promotion. The legislature decided purposefully to change the word from promotion to advancement, which is admittedly a fuzzier term. And what the district court did improperly, by not looking at the language of the statute and the legislative history, was create what it thought was a nice, bright-line moment for employers.  What the legislature said was exactly what Your Honor just said. That is, it is something that's meaningful, a meaningful advancement. In fact, the definition of the term, the plain definition of the term is a step forward, an improvement. Promotion happens to be the third of four sub-definitions of advancement. It is a form of advancement. And I think the most telling exchange to answer the court's question comes from the two employers that testified before the legislature. One employer was Les Schwab Auto Tires. The second was North Pacific Lumber Company. Les Schwab testified along the lines the court has just mentioned. It was a very standard promotion process. I have an assistant manager. I want to make him or her a manager. In that position, they will get clientless and customerless. I want to be able to protect it. And that was one aspect of advancement that was put before the legislature. But the second one is the one that we're dealing with here. North Pacific Lumber was not concerned with an actual promotion, with the moment in time when the employee assumed 100% of the duties and responsibilities. What that testifying employer said, in fact, the chairman of the Business and Consumer Affairs Committee said to the employer, when is the ideal time? When is the ideal time to have a non-compete sign? And the employer said, quote, it is at whatever time he or she is going to be exposed and have access to the proprietary information. If it is one who is hired for some other task, it is at the time it becomes apparent he could or should or would like to be in the trading activity. My problem with that is the legislative, we've got to interpret the statute. And normally we wouldn't go to the legislative history except for informational purposes if the statute is unambiguous, at least as to its meaning. And then the court can interpret the legal meaning of a term. So I come at this a little bit differently, and that is the judge made a series of factual statements using the statutory term. Unless that is in clear error, and that is the foundation of his ultimate legal conclusion, how can we overturn the district court in this posture? District court made three errors of law. First it failed to follow Oregon law and statutory construction. Oregon law requires that if a term is ambiguous, you look first to the text, and then secondly if need be to the legislative history. Well, that's right. Let me just stop there. If it's not ambiguous, but it's a question of determining an application of it, then you would just stick to the statute, correct? If it is an unambiguous term, and what we're doing here, well, first of all, an application, a misapprehension can be an error of law. If it's a correct reading of the statute, but the decision results from facts, then we deal with a clearly erroneous standard. What we have here is a court that did not follow Oregon law and statutory construction. I just want to make sure I understand. What's the ambiguous term we're dealing with here? Upon bona fide advancement is the term. And your Honor just mentioned that the lower court found a bona fide advancement. It did not. The court found a bona fide, quote, promotion. An Oregon statutory law prohibits the insertion of an omitted term or the omission of an inserted term. Throughout the court's order, the court says bona fide promotion. In fact, at the very beginning of the court's opinion, the court states the correct standard of the law inserting the wrong term. The court says, and I quote, I apologize for the delay. The court says, and I'll paraphrase, it's in the very beginning of the order, that under Oregon law, any employee non-compete agreement executed after a bona fide promotion is not effective. The court is absolutely right that under Oregon law, any employee non-compete agreement executed after a bona fide advancement is not effective. There is no use of the word promotion. Okay, let me stop you there. If you have an advancement, which could precede a promotion. I guess that's your position, correct? Promotion is a subset, is a type of advancement. There's a formal promotion. So wouldn't the district court's statement be correct? So in other words, let's just say you had a promotion. If you sign an agreement after a promotion, that, per force, would be in violation of the statute because it would be in complement with the advancement. So it could never be legitimate if they make you sign it after your promotion. Well, actually, if we return to the lumber trader example, what the court did was, number one, impermissibly expand the time, the temporal component. Because now, all an employer needs to do is not change its HR records, and a promotion hasn't occurred. So that employee could live in limbo forever. That's the way it is. Maybe you're misunderstanding my question, or I may not be being very clear. I'm not saying that there also may be periods prior to the promotion for which it would also be improper to execute an employee agreement, a non-competition agreement. But at the outside, certainly after promotion, it would be improper. Would you agree with that? After a promotion would clearly be an improper time. So therefore, the district court statement in that regard is not inaccurate. The question is then, in this case, did all the facts lead to a conclusion that there was an advancement? And at what point do we take the advancement? I mean, that seems to me to be kind of a $50 question here, is whether the district court erred in pinpointing the advancement date. Well, the district court did err, but it's not a factual error. It is a legal error, because the district court used a term that doesn't exist in the statute. Well, why do you say that? Because I'm looking at ER 11, and he says, the issue here is timing, not whether there's been a bona fide advancement. And then he comes down and he says, for purposes of analyzing the statute, I find that an enhancement in job duties and responsibilities, a change in job title, a change in payer benefits must converge to constitute the triggering date for a, quote, subsequent bona fide advancement within the, and then he talks about, in this case, factually, that your client got a promotion. Okay, so I, but the, he's not defining or substituting, and as I read it, the term promotion. Maybe I'm just not picking up the part of the. The court found at ER 13 that under its new definition, Mr. McCarthy, quote, did in fact execute a non-compete agreement at the commencement of his promotion. Well, that's right, because that's the fact here. He said, help us understand your perspective on this, because I'm reading the opinion as saying, look, I'm trying to figure out whether this guy got an advancement, and there really is no dispute that he, in fact, was promoted. So in this case, this isn't one of these things where the employer has changed, simply changed title to give him a nominal kind of thing so they can justify after his employment, giving him a non-compete, make him sign a non-compete agreement. So there's no dispute in this case whether he actually advanced. The question is, when did it occur? And that's why when I originally asked you, what is the, what is the meaning of upon in this statute? Because the question that I'm struggling with here is, does the employer, and I've read that same legislative history, that one simple Q&A at the end of the legislative history, but they weren't focused on this kind of a case. It's a little hard to say, extract from that and say that what we should impose upon the Oregon statute is a construction that says at the very moment in time that someone could make a judgment that he had moved beyond what he was before, that he got some kind of information or that he got a, that gave him a new title but no new pay. That that is the time in the employment relationship that if they don't get that non-compete agreement signed, then they're dead. Because no matter if it progresses through a period of days or weeks, if they missed the inception date that we're reading into the word upon, they're sunk. That's the problem I'm having. Everyone, all courts agree that upon means before. So for me, the real issue is the bonafide advancement. The Judge King's. Means before or means at the same time? Simultaneous or before. By the time of. All courts, as I read it, agree with that. And what Judge King and Sumner versus West, First America versus Sumner, said was it's upon the increased access for confidential information. And that's exactly the exchange between the lumber trader and the chairman of, chairperson of the Senate subcommittee. What, your honor, taking your question, imagine, imagine the exchange between the legislature. Under this court's order, under this court's order, that lumber trader who's trained for two to five years before he or she can assume full responsibilities and be quote unquote promoted, can walk out at any time, even if she signs an agreement on the first day of the training. I give you the book. Here's how to be a lumber trader. You sign this agreement because I'm not going to let you walk out with it. If she signs that agreement and on, in the fifth year walks out, that agreement is void under this court's test because there has been no promotion. And the point that, that Mr. McCarthy is making here is, the legislature intended to make it broad. And it's no more difficult, by the way, than it should be. Don't misunderstand me. I'm not trying to defend the convergence test. I'm trying to understand what the word upon means. And I think. And whether in this case, whether it would misconstrue the statute to say that, A, we've got the elements of a bona fide advancement. Okay, so now that we know it. Now the question is timing. When in the process is the employer supposed to exact it? Your bright line test, you're extracting from Judge King's opinion, is at the instant that they give access to confidential information, that's it. And the reason that has to be. So you want that bright line test. Yes, your honor. And the reason that has to be is that's the only legitimate interest the non-compete protects. That's why the employers went to the legislature and asked for this additional relief. Okay, so let me just. I want to pursue this because I think, you know, the judge in this case is trying to create a bright line test for the employers, you'd say, or maybe construed that way. You want now to read another bright line test. So if the fact is that the person is given no pay increase, nothing, but has been given confidential information, that is the advancement that is discussed in the statute. No, it's the confidential information as part of the process of moving forward. In other words, if someone's given confidential information as part of their job, their existing job, then we wouldn't be having this discussion. That's where we return to the plain definition of advancement, which is a step forward. Okay, let me ask you then. You have somebody who changes jobs, but they don't get any increase in pay. They do, however, in changing their job, get access to different confidential information. Is that an advancement? If the next job is a betterment, yes. And the betterment has to be in the form of title or salary? Absolutely not. The legislative history did not put form over substance. The legislative employers came before the legislature and said, we want to be able to advance employees. There are things that we need to do. For example, the lumber trader example is, there's no confirmation or commitment that that person will, in fact, be promoted to trader. But there's no way to get to that moment without very confidential information being given for training. And the employer wanted to know that at that moment, it would be protected. The interesting thing is, it's not as fuzzy as it might appear. It's no more different at the end of the day than trade secret protection under the common law. Every employer is charged with knowing when he or she or it is giving an employee confidential trade secrets that require protection. But it's a difference because trade secret is a continuing obligation. And you have that imputed to you as an employee in virtually every state, whether or not they have the Informed Trade Secrets Act. So it's different, it seems to me. Because here, the concern, the real concern is, if you want to exact a non-compete, you can't just willy-nilly go into your workforce and start imposing these without, in effect, giving someone additional consideration, which is the advancement that you're talking about. I mean, that's really the concern. We can't call it consideration because it's a statutory issue. And I understand that that's a major issue. But that's where it came from if you go back in history. This, well, actually, it does on the initial employment piece, but it didn't necessarily on the bona fide advancement exception. The initial employment issue was originally an issue of consideration. Well, it was when employers were basically holding people hostage to keep their job. They have their job and then they say, oh, you know what? We've now gotten a very spiffed up HR department and we're going to make everybody sign these agreements. And that's when employees rightfully called foul. So if you go back, that's really what prompted a lot of this discussion. My concern is that I'm not sure you need a bright line if you have a fact finding in every case and a determination of what under the facts of that case meets advancement. I mean, why do you need a bright line? We don't, but let's take this case, for example. The court found below that Mr. McCarthy was offered the job, accepted the job. The record shows absolutely that he gained access to increased information, region-wide customer sales information that he never had before, that he intended a meeting, a sales meeting, if I may complete the answer, attended a sales meeting where he ran the meeting, he prepared a forecast that he had never prepared before, he went to the Lipton tennis event and entertained clients that he had never entertained before. And the facts of those cases show that according to the court, it may not have been a promotion, but it was clearly an advancement. You can't look at that set of facts as a matter of law and say that's not an advancement. And the lower court didn't. The lower court didn't say it wasn't an advancement. The lower court said it wasn't a promotion. Now, the one issue of fact that we argue was clearly erroneous, which bears on this issue, is Mr. McCarthy believes that even if you want to find the substantive promotion, if you will, as opposed to the title or the rank, it's here. The only issue of fact that we argue is clearly erroneous today is that the court found that Mr. McCarthy had not assumed 100% of the duties and responsibilities before he signed. That finding was based on the testimony, purportedly, of Brian Ford. Brian Ford testified that he, quote, unquote, helped out with the forecast in the middle of March. Can't remember what he did or what exact role he played, but in the middle of March he worked on a forecast. There is not a single piece of testimony of him doing anything after that moment, two weeks before this is signed. And Mr. McCarthy testified without rebuttal that by the time that forecast was done, he was performing 100% of the duties and responsibilities. His testimony was there was no change before and there was no change after. So even if we are put to the test of saying that an advancement only occurs when 100% of the duties and responsibilities are assumed, the record I submit shows that it was a clear error of law to find that that did not occur before this agreement was signed. There is absolutely nothing in the record, nothing, that says any aspect of his life changed after he signed that agreement, except he got a pay raise, they changed their internal records, and he got a title. In fact, there was even an announcement in mid-March that the judge said, well, that was an announcement that he was going to become. What if I might ask a question? Oh, sure. Just from a common sense standpoint, he had already signed a non-competition agreement as part of his being a key account manager. Had he not? And it was void. Why? The court found that he took that job in June of 1995, and the court found specifically that he signed that agreement after he took the job. So we never addressed that below, but if there's any inference to be raised, that agreement was void. And also, it's circular in the sense that the old agreement can't cover the new one. What's the status of it in the record, then? The status in the record is a finding that he took the job in June of 1995, and that he signed that agreement after he took the job. But his objection isn't predicated on that. That is correct. But I'm saying to the extent that we're looking at it practically or making assumptions. Yeah, I was looking at it from the standpoint that if he already had one, and he's transitioning into a new job, and those things are, you know, he's getting some additional stuff, but not completed. He didn't know his salary. The records and so forth didn't really reflect the promotion until April 1st. I was just thinking if he had one already, and now the question is whether he has to sign a new one. Well, everyone agrees that with his advancement, he needed a new one, because the other one covered only the camp position. But again, that gets back to the court's point of form over substance. Okay, well, I just was wanting that cleared up. Thank you. Thank you. Please, the court, counsel, Scott Seidman on behalf of Nike. Now with me is my partner, Amy Peterson. I'd like to focus on what seemed to be on the court's mind, and that was that this is a case where Judge Marsh, as a matter of fact, made a factual determination that Mr. McCarthy signed his non-compete before he received a bona fide advancement to become the regional footwear sales manager for Nike's eastern region. Judge Marsh heard the testimony of 11 witnesses, either via live testimony or via video deposition, and there was ample documentary evidence that was submitted, and there was plenty of evidence to support Judge Marsh's conclusion. The problem is that the conclusion flows from his construct of the statute, and he's created this convergence test, which, at least from my standpoint, is questionable, because looking at the statute to insist that there be a pay increase and that there be a title change and that there be these job responsibilities goes well beyond what the statute, at least if you consider its legislative history, seems to contemplate. I'm still wrestling with the notion, though, of whether at some point in the process, as a practical matter, and given the intent of the legislation as I understand it, that there's this high-risk line drawing as to when you've done enough to say whether or not you've formalized it, you have effectively advanced the person, and it's legitimate. Therefore, the employer is entitled, because of that, to insist upon a non-compete agreement. But if you fail to pick the right time, you've actually advanced somebody, and you've missed your chance to get the agreement. The tension in here is too early or too late, and I'm wrestling with that. Well, I understand Judge Marsh to have been taking into account factors that would have seemed relevant to him to apply here to the circumstances we had in this case. In this case, what we had in the issue before the court was, was the non-compete signed before Mr. McCarthy was promoted? Here's the issue, if you could sharpen your focus. The issue here is protecting your client against competition if he should depart. And what they're really most worried about is that he's got sales forecasts, he's got information now that's been exposed to him in conjunction with his advancement, if you will, and that's what you want to protect. And it seems to me that's the critical inquiry, as counsel suggested, that it's at the time when you start entrusting this employee with the information you seek to protect from a non-compete agreement. You shouldn't be able, necessarily, to defer formalizing the non-compete until, let's suppose his interim period was three months. Could you keep exposing him and then at the end of the three months say, okay, now we want you to sign the non-compete agreement, even though in the course of events you were continuously feeding him this confidential information, and yet his promotion didn't take place until April? Well, Judge Marsh certainly heard the evidence about the confidential information that Mr. McCarthy was exposed to during what was actually not a very long period, it was a fairly brief period between the time when he was first proposed. About three weeks, wasn't it? Yeah, three, maybe four weeks. Yeah. John Kerry moved from zero to 60 in six weeks. But the testimony at trial was that the information that he was exposed to was information that was available to him as a key account manager, and that was expressly testified to. And Judge Hugg raised the question, what about this prior non-compete that he had signed as a key account manager? Whether or not the non-compete aspect of that key account manager agreement was enforceable, we don't need to get into that here because we're not trying to enforce that non-compete. Mr. McCarthy was under a – part of that agreement was a confidentiality agreement, so he was already under a confidentiality agreement as a key account manager. And there's no statute that requires that a confidentiality agreement be entered into before you get a promotion. And, of course, the common law implies an obligation as a matter of law to maintain the confidences of the employer whether or not you sign such an agreement. So the circumstances we had here were that Mr. McCarthy was exposed to some information, which, as was testified to, was information that would have been available to him as a key account manager, and that he got nothing that would not have been available to him as a key account manager. So trying to take some confidential information that he was exposed to during that period and saying, well, boy, that creates the cutoff point. It doesn't deal with the facts or the reality of this. I agree with that. I mean, I don't think that, to my mind, the confidential information can't be the linchpin. But the question is, at what point was there this bona fide advancement? Now, Judge Marsh made various factual findings, and I'm serious of questions for you, but the first one really goes back to the one raised by Mr. Kroll, and that is at a certain point he had actually assumed 100 percent of his duties, and he didn't do anything different after that. That was before, of course, the formal title change. Why wouldn't that be the point of advancement that would trigger the timing? Well, there was contrary testimony, and that's not accurate. Judge Marsh found, based on contrary testimony in the record, that he had not assumed 100 percent, and that Mr. Ford was still responsible for the regional footwear sales manager position. For example, Mr. Ford testified that he was ultimately responsible for the sales forecast that was performed. Now, you're talking about something that occurred six years before, so Mr. Ford didn't have a very good recollection of what he may have done in connection with that sales forecast, but he did testify that he was, in fact, responsible for that. And there was additional testimony, and I'm sorry I'm going to forget the witness's name, but it's cited in our brief, that if Mr. McCarthy had assumed full responsibility for those duties, in fact, he would have had the ability and would have been responsible to send the sales forecast himself to this person whose name I'm forgetting, and I'm sorry, I apologize for not remembering the name, and that he would have had the facility to do that with a one-touch send button. In fact, he did not do that, and he did not have the capability or ability to do that. So he did not assume the full, the testimony was clear, he had not assumed the full responsibilities for the job, and there was more to it. So is it your position, then, that the statute requires 100% of the full duties before, you know, that's the cutoff, and that the employer can defer that as long as it reserves a percentage? Well, it's my position. Keep it alive for, you know, eight weeks? I'm not trying to be cute, I'm just trying to figure out how you impose the timing on this when the statute seems to say, look, the employer's entitled to do this, the real question is whether it's bona fide, whether there's a real advancement here or not, and you seem to be saying, look, he was advanced, but he wasn't 100% advanced. Well, no, because what happened was he, I would make it, characterize it or make it akin to somebody who's being, in effect, trained or being given an opportunity or shown what's involved in the job. Rather than simply taking somebody and just plopping them down in a job they have no familiarity with, Nike took the intelligent step of making sure that the employee gets some familiarity with the job, but they don't give the employee the, they don't make the employee, they hadn't at this point made Mr. McCarthy the regional footwear sales manager and had not given him the duties or the responsibilities in connection with it. Instead, those remained with Mr. Ford. Mr. McCarthy continued to be the key account manager, as he had been. He had responsibility for those clients, and he was paid as the key account manager, and Mr. McCarthy testified that that was appropriate. Well, do you agree that the test is advancement, not promotion? The question is advancement, yes, and that's the test. And where does promotion, as used in the facts of this case or your client's business, how does that fit into analysis of advancement in your view? Well, one form of advancement would be a promotion, and in this case, the form of advancement that I believe we're talking about is the promotion to regional footwear sales manager, and so that was the advancement that was at issue in this case, and the question was, and I think Mr. McCarthy was trying to take the position that, no, I became the regional footwear sales manager before April 1st, and he put in some factual testimony to try and show why that was the case. Well, what if the person, what if he were in effect performing the duties during some period of time, but they hadn't changed the papers at HR and hadn't given him the pay increase? But in effect, he's not only doing his old job, but he's doing the duties of the new job. Would that be an advancement? Well, I can certainly imagine where there would be some circumstances where that might be the case, but that wasn't what occurred here. The testimony was, even from Mr. McCarthy, that Nike had a transition plan to move him from key account manager to regional footwear sales manager, and as part of that transition plan, he was indeed exposed to what that job was all about. Just so I can understand, because we're being asked to understand the statute, let's suppose that Nike's policy was to select someone for advancement like this, but it was their practice that it would be a 30-day shadowing period in which Mr. McCarthy would do all of the activities but be shadowed by Mr. Ford. So there was no doubt that he was doing 100 percent of everything, but his predecessor would be overseen. And then at the end of the 30-day period, the formal documentation all occurred. What would the statute say, in your view, as to when he was advanced and therefore the time for executing the non-comp was? Well, I would see that as something akin to a training period. We have one person who's basically responsible in training the other person. So when would Nike have had to get the non-comp signed? At the beginning or the end? At the end. So you say 30 days, you can be doing the full job and all of that, and until it's formalized, you don't have to do the paperwork. Well, as I understood the question, what you're doing there is you've got somebody who's ultimately responsible for the job. He's working with the person to get that person to become in a position to be able to do the job. But the advancement doesn't happen until it's formalized. The advancement wouldn't happen in that instance until it, in fact, occurred. I mean, in this instance, one thing you have to remember here is that in order for – we have a situation here where Mr. McCarthy received an offer letter. I mean, there was a formal offer letter that went to Mr. McCarthy that was dated March 25 and said, we're offering you this job, we're offering you this promotion. And Mr. McCarthy – and along with the offer letter, Mr. McCarthy received a non-compete agreement. And he was required to sign a non-compete agreement as a condition to advance to the position that was at issue here, the promotion. The testimony from both sides, including Mr. McCarthy, was that Mr. McCarthy could – So Judge Marsh considered that to be a significant issue in the analysis of when the – when the bona fide advancement occurred here because that was a condition for the advancement to occur. Everybody agrees if he had not signed the non-compete, he wouldn't have been – he wouldn't have become – he wouldn't have gotten the promotion. I mean, the advancement we're talking about here is the promotion, and he wouldn't have gotten it if he had not signed the non-compete. How then could he have had the promotion prior to signing the non-compete? And the answer is he couldn't have. What would have happened had he not signed the non-compete? Had he not signed the non-compete, he wouldn't have become the RFS, Regional Footwear Sales Manager. And he couldn't have said, no, I am the Regional Footwear Sales Manager, because he wouldn't have become that position. And that was testified to by several witnesses of Nike, including the Vice President of Human Resources and Mark Dugan, the Vice President who was ultimately responsible for making the promotion. Other facts that were elicited during the course of the case show that for Mr. McCarthy to get the position, it wasn't – the person who first approached him was John Peterson, and he was the person who identified Mr. McCarthy as the candidate. And he decided, I want to promote Mr. McCarthy, but he didn't have the authority to promote Mr. McCarthy. Rather, there was a formal process that had to be gone through at Nike, which included submission to Mr. Peterson's superior, that was Mark Dugan, and also it had to be submitted to Human Resources for approval. And there was a question of salary. He was going to get a raise here. There was no salary offered at the time he was first approached. And he had – internal management at Nike had to approve any salary change. Of course, he wouldn't need a salary increase to have an advancement if he were effectively performing these duties, would he? Well, I think people get additional duties all the time without getting something that I think folks would say is a bona fide advancement that would allow the employer to give the – or assign the employee up to a non-compete. The mere giving of additional duties doesn't constitute a bona fide advancement. Would he have had the additional duties, for example, of conducting the meetings and the other things, if, in fact, he no longer was going to get the promotion? In other words, he was doing these things on the idea that he eventually was going to get the promotion. But if he didn't get the promotion, for example, for not signing the non-compete thing, he would no longer have had those duties, would he? Well, that would certainly be corrected. He would not have been the regional footwear sales manager and he would not have become responsible for, for example, doing sales forecasting. He would not have become responsible for leading sales meetings. So he would not have gotten those responsibilities. So he would not have had an advancement from that standpoint because he would no longer be able to do it. Correct. Correct. So you're focusing now on really when he became responsible as being a possible touchstone of advancement. Is that – do you think that's a factor or do you think that's a defining factor? Well, I don't – I'm having a hard time contemplating how you – in the sense we're talking about a promotion, I'm having a hard time contemplating how you get a promotion without actually getting the responsibilities that come with the promotion. I mean, one of the ways to look at the difference is – You could get an advancement without – Right. You could get an advancement if you, in fact, were responsible. You're saying that during this interim period, he actually didn't have any responsibilities. He was not made responsible for that. He was like a shadow person. Let's suppose – I'm trying to assert this now. Let's suppose the following, that the person, Mr. McCarthy, was given additional responsibilities, which included sales forecast, but he was not given a change in title, but he was given a beautiful corner office at the end of the hallway, and he was now supervising five employees that he had not supervised before. Would that constitute an advancement? And no pay increase. Title on the door, Bigelow on the floor, but no money. He had significant additional responsibilities and additional staff and a better office, but no pay increase, and they didn't give him any official title. Well, that could be a – yeah, that could be a circumstance where you could have – you could have a bona fide advancement. Not under the district court's test, though. Well, I always understood the district court as trying to apply a test that – that made sense for the circumstances that were present here. But you can't say that when the guy got his pay raise was irrelevant here because a pay raise was involved here. And you can't say that when he got his job title was irrelevant here because a change in job title was involved here, and there's no dispute about that. So those things are certainly relevant here. I don't really read Judge Marsh's test as being this kind of test that might apply to every case. For example, in the situation as described by counsel in the North Pacific Lumber case, that may be an instance where you might have more than one bona fide advancement that occurs. And you could argue that here, too. I mean, let's suppose for a moment that you characterize what happened when Mr. Peterson first approached Mr. McCarthy and said, I'm interested in making you the retail footwear sales manager. Now he gets access to some confidential information, and he does a few of these duties. Suppose that is a bona fide advancement. Does that mean that what happened on April 1 here when he actually got the promotion, got the raise, got the change in job title, and actually became responsible for those duties, that that in and of itself didn't constitute a bona fide advancement such that Nike was entitled to insist on a non-compete here. Now that's not how I see this case as actually the way it played out, and that's not how Judge Marsh found it. But even assuming counsel is right, I still think you have a situation here where he did get it. He got a bona fide promotion, which is a form of advancement. It took place on April 1. We have ample evidence to show that's when that occurred. I think we have your point. Thank you very much. You're out of time, but we're going to give you some more. Your Honor. Why don't you take a minute or two as needed. The training example is a perfect example. If I'm an entry-level employee and I'm designated to go into the management training program and in that program gain access to confidential information, that's an advancement. And upon the entry into that program, the statute would require that a non-compete be signed. What's the authority that acquisition of confidential information is an advancement? First Law America v. Sumner found that specifically. And by the way, in closing arguments, Nike said in its closing argument that that is exactly what Sumner stands for. Nike in closing said that Sumner stands for the proposition of when a bona fide advancement occurs, it occurs when there's some sort of increased access to confidential information. That's Nike's argument in closing. So really both parties agreed before the court below when that occurred. But, Your Honor. My problem with this is that those things that you are contending are advancements were contingent upon his eventually getting a promotion. If he did not get the promotion, he would no longer be conducting sales meetings. He would not be doing the other things. It's different from what Judge Fischer just mentioned where a guy gets a new corner office and he's all set up and he's got these advancements have all taken place. They haven't taken place yet until he gets a promotion because he's not going to be doing that job. Well, except all the things that constitute an advancement have. The promotion has not. And actually your question is a good one, Your Honor, because it brings into bear another focus of the statute, which is the surprise. Here you've got a guy who's been announced doing the duties in public with clients, looking at confidential information, interacting with people who used to be his peers, but he's now their boss. And he's presented a month later with a contract where he has to say, you know what? If I don't sign this, I'm fired. They've announced to me at a public meeting that I am the new regional footwear sales manager. There's no dispute about that. So that's his choice, and that's exactly one of the things the statute looked to avoid. Is there any evidence in this case that he was surprised that he was going to be asked for one? The hiring manager who made the job offer to him testified that he had no idea. He had never talked about a non-compete with him. No one else had talked with him about a non-compete, and the first time he knew of it was when it showed up on his desk on March 26th. But he had signed one before. He had signed one before. That's correct. And the statute requires not that there be some general understanding of use. The statute requires that there be an agreement in place. And you're absolutely right, Your Honor. This is a high-risk wire test, and that is exactly what the legislature intended. If there's going to be any erring, the legislative history makes it absolutely clear that the erring is to be on the side of the employee. All non-compete agreements in Oregon are void and shall not be enforced unless executed in strict accordance with the statute. Could you tell us what the timing consequences of the injunction are in terms of the non-compete? I'm sorry, Your Honor. I don't understand the question. Well, is it supposed to expire in August of 2004? Well, unfortunately, one of the things that we claim is that the court did not give us credit for the five weeks in which everyone admits there was no breach. So we believe it should expire five weeks earlier. But we are coming upon the expiration of the order. All right. It will expire either if this Court so rules in mid-July or at the end of August. And our standard of review is the one for preliminary injunctions in which we're considering the likelihood of success and the role it partures. Well, that's right, Your Honor. And there's no mention of irreparable harm in the order, period. There's not as – and none's possible because this contract has two pieces to it. One is a non-compete. The second is a compete. So there's not to be irreparable injury. Well, if you have the prong that deals with the probability of success, that prong calls for finding the possibility of irreparable harm. That's the prong this Court was using. It didn't use the prong going to the serious questions on the merits. We have no irreparable harm here. We have a completely separate non-compete clause or confidentiality clause. It's a balance of harms. It's not irreparable harm on anybody. It's just a balance of the harms on one and the other. Well, two answers to that, Your Honor. Number one, as I read it, the first prong is not a balancing of the harm. It's high probability of success. Yes, that's right. You're right about that. And that's the prong the judge used. So what he did was he took one piece from prong one and one piece from prong two. He found probability of success but no irreparable harm but a balance of the hardships. The second answer is there can't be any hardship here because the only thing Nike will suffer is competition. The judge ruled that he was granting specific performance of the bargain for right to regardless of. . . What's the hardship to your client? I'm sorry? What is the hardship to your client? He's been out of a business that moves minute by minute for 10 months now. Yeah, but he's being paid. That's not. . . And his benefits are being paid by Reebok. Well, actually, it's not before the court at this point, but that's not entirely correct, number one. And number two, money is not an issue when it comes to irreparable harm. He's been in the newspaper. He's sitting on the beach. He's left out of the employer. But the last point. . . Sitting on the beach isn't that bad. Well, it is if when you come back. . . It is if you're an executive that wants to be employed. That wants to be back. Your Honor, he asked me a question and I. . . Why don't we just conclude with that? Thank you. All right, thank you. The case of Nike v. McCarthy is submitted and will adjourn for this morning. Thank you for the arguments. It's a very interesting case, and as we know, not many cases on this subject in Oregon. Thank you. The court for this session stands adjourned. The Court is adjourned.
judges: Hug, McKeown, Fisher